1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8          **CENTRAL DISTRICT OF CALIFORNIA**
9          **WESTERN DIVISION**
10

11   ROBERT SMITH,                    )          No. ED CV 06-883-PLA
                                      )
12              Plaintiff,            )
                                      )          **MEMORANDUM OPINION AND ORDER**
13        v.                          )
                                      )
14   MICHAEL J. ASTRUE,[1]            )
     COMMISSIONER OF SOCIAL           )
15   SECURITY ADMINISTRATION,         )
                                      )
16              Defendant.            )
17   _____)

18                              **I.**

19                          **PROCEEDINGS**

20          Plaintiff filed this action on August 15, 2006, seeking review of the Commissioner's denial

21   of his applications for Disability Insurance Benefits and Supplemental Security Income.   The

22   parties filed Consents to proceed before the undersigned Magistrate Judge on August 24, 2006,

23   and August 25, 2006.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on April

24   20, 2007, that addresses their positions concerning the disputed issue in the case.  The Court has

25   taken the Joint Stipulation under submission without oral argument.

26   /

27   _____

28          [1]    Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.

## II.

## BACKGROUND

Plaintiff was born on June 13, 1958.  [Administrative Record ("AR") at 81.]  He attended school up to the twelfth grade and has past work experience as a head custodian.  [AR at 91-92, 95.]

On April 19, 2004, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income, alleging that he has been unable to work since June 5, 2002, due to degenerative disc disease and a back injury.  [AR at 17, 28, 81-83, 90-91.]  After a denial of his applications, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 49-54, 59-63, 65.]  The hearing was held on August 17, 2005, at which time plaintiff appeared with counsel and testified on his own behalf.  A medical expert and a vocational expert also appeared and testified.  [AR at 23-48.]   On October 28, 2005, the ALJ determined that plaintiff was not disabled.  [AR at 17-22.]  When the Appeals Council denied review on June 12, 2006, the ALJ's decision became the final decision of the Commissioner.  [AR at 6-9.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.   The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability.  [AR at 21.]  At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative joint disease and degenerative arthritis of the lumbosacral spine and right mild carpal tunnel syndrome.  [Id.]  At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listing.  [Id.]  The ALJ further found that although plaintiff is unable to return to his past relevant work (step four). [AR at 22.]  At step five, the ALJ found that there are a significant number of jobs in the national economy that plaintiff can perform.  [Id.]  Thus, the ALJ found plaintiff not disabled.  [Id.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in evaluating plaintiff's testimony.   Joint Stipulation ("Joint Stip.") at 2.  Plaintiff argues that the ALJ failed to state any clear and convincing reason for rejecting his testimony.  In the decision, the ALJ found that plaintiff "appeared sincere in respect to his testimony on his subjective complaints such as the existence of pain and is credible as to his symptomology, but not as to the disabling nature of his condition."  [AR at 19.]  Specifically, the ALJ found that plaintiff's statements concerning the disabling nature of his condition were not consistent with his conservative treatment, statements from his physicians, daily activities, and use of a cane that was not prescribed by his physician.  [AR at 19.] Plaintiff contends that the reasons cited by the ALJ lack merit.  As discussed below, the Court agrees.

Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). Indicia of unreliability upon which an ALJ may rely to reject a plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) a conservative treatment regimen. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Plaintiff testified that he spends most of the day alternating between lying down, walking around, and sitting, and that he constantly has to change positions. [AR at 31.] Plaintiff also testified that he can only stand for 15 to 20 minutes at a time and only for a couple of hours total during the day due to upper and lower back pain and weakness in his legs. [AR at 29.] Plaintiff needs to lie down, for at least twenty minutes at a time, between ten to fifteen times a day. [AR at 32.] Plaintiff further testified that he gets severe headaches two to three times a week that last one to two hours if he takes medicine and lies down in the dark. [AR at 32-33.] He also complained of getting headaches that last an hour, three or four times a week, that require him to turn off the lights. [AR at 32-33.] Finally, plaintiff complained of carpal tunnel syndrome and a bone cyst that cause him pain in his right hand. [AR at 33.]

1.   <u>Conservative Medical Treatment</u>

The ALJ gave limited weight to plaintiff's testimony based, in part, on his conservative medical treatment.  [AR at 19.]  An ALJ may rely on a plaintiff's conservative treatment regimen to reject a plaintiff's testimony of disabling limitations or disabling pain.  <u>Fair</u>, 885 F.2d at 604.  In <u>Fair</u>, the Ninth Circuit affirmed an ALJ's credibility decision where the ALJ stated, among other things, that the claimant received only minimal conservative treatment for his various complaints. <u>Id.</u>

Here, the ALJ noted that plaintiff received conservative treatment prior to his decompression and fusion surgery in June, 2003.  [AR at 19.]  Medical records indicate that prior to the 2003 surgical procedure, plaintiff underwent treatment consisting of physical therapy, medications, activity modification, and injections.  [AR at 125, 169, 202, 210-11.]  The records also indicate that this treatment failed to provide significant relief and that surgical intervention was discussed.  [AR at 169, 202, 210-11.]  While plaintiff's treatment was described by his physician -- and consequently, the ALJ -- as "conservative," the Ninth Circuit has found that a claimant underwent "conservative treatment" in instances where the claimant had not received physical therapy for his back complaints for approximately two years, and had not been hospitalized for evaluation or treatment during the two years prior to filing his application for disability benefits. <u>Fair</u>, 885 F.2d at 604.  As such, the Court does not agree that plaintiff's treatment consisting of physical therapy, medications, activity modification, and injections constitutes "conservative treatment" under Ninth Circuit standards.  [AR at 165, 169, 202, 210-11.]

Furthermore, the Court finds that the fact that plaintiff attempted to treat his pain using alternative methods before opting for surgery does not reflect poorly on plaintiff's credibility.  Prior to the surgical procedure in 2003, plaintiff underwent a spinal fusion in 1996.  [AR at 165, 174.]  Thus, it was reasonable for plaintiff to attempt to treat his condition with alternative means prior to undergoing another surgical procedure in light of the fact that he previously underwent surgery without complete relief.  The Court notes, moreover, that plaintiff did eventually undergo a surgical procedure when the alternative methods failed to alleviate his pain, which bolsters his complaints

1    that he suffered from disabling pain.  As such, the Court finds that the ALJ's reason for giving less

2    weight to plaintiff's testimony due to his conservative treatment prior to surgery lacks merit.

3              2.    Contradicted by Physicians

4         The ALJ also rejected plaintiff's testimony of a disabling impairment based, in part, on

5    statements made by plaintiff's physicians. [AR at 19.]  An ALJ may rely on inconsistencies

6    between a claimant's allegations and a physician's opinion to discount the claimant's credibility.

7    See Moncada, 60 F.3d at 524 (discrediting plaintiff's testimony of excessive pain, in part, because

8    plaintiff's treating physician and examining physician believed plaintiff could do sedentary work);

9    see also Allen v. Massanari, 2002 WL 143372, *5 (N.D. Cal. Jan. 25, 2002) (rejecting plaintiff's

10   excess pain complaints based on physician's opinion that plaintiff could perform work); Ouellette

11   v. Apfel, 2000 WL 1262642, *14 (N.D. Cal. Aug. 24, 2000) (physician's opinion may indicate that

12   plaintiff's subjective symptoms are less severe than plaintiff claims); Light v. Social Security

13   Admin., 119 F.3d 789, 792 (9th Cir. 1997) (in weighing claimant's credibility, ALJ may consider,

14   among other things, testimony from physicians concerning the nature, severity, and effect of

15   symptoms of which claimant complains).

16        Here, the ALJ noted that Dr. Keola Chun opined that plaintiff could not return to his usual

17   customary work.  [AR at 19, 161.]  Dr. Chun's statement that plaintiff cannot return to his

18   customary work does not reflect negatively on plaintiff's credibility.  Rather, such a statement --

19   with no reference to plaintiff's ability to perform other work -- appears to bolster the veracity of

20   plaintiff's subjective complaints.  The ALJ also noted that Dr. Naresh K. Sharma recommended

21   that plaintiff be rehabilitated to a position involving only light work with no prolonged standing,

22   walking, or sitting, and that ongoing conservative management would not change his condition.

23   [AR at 19, 272.]  With respect to Dr. Sharma, it is unclear how Dr. Sharma's assessment renders

24   plaintiff's subjective complaints not credible, since the ALJ does not provide a sufficient

25   explanation in her decision as to how Dr. Sharma's assessment undermines plaintiff's credibility.

26   An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the

27   reviewing court to assess whether the decision was impermissibly arbitrary.  Bunnell v. Sullivan,

28   947 F.2d 341, 345-56 (9th Cir. 1991).  Here, the ALJ fails to sufficiently specify how Dr. Sharma's

1    assessment suggests that plaintiff's complaints are not credible.  As such, the ALJ's rejection of

2    plaintiff's testimony of a disabling impairment on the basis of the assessments of Dr. Chun and

3    Dr. Sharma lacks sufficient evidence.

4            3.    Plaintiff's Daily Activities

5            The ALJ also rejected plaintiff's credibility based on his daily activities, finding that they are

6    "consistent with the ability to perform certain work functions and inconsistent with a finding of

7    disability." [AR at 19.]  The ALJ noted that plaintiff indicated that he washes dishes, helps with the

8    housework, watches television, and occasionally prepares meals.  [AR at 19.]  The ALJ found

9    these activities at odds with plaintiff's claims that he has an incapacitating or debilitating condition.

10           In evaluating a claimant's credibility, the ALJ must consider the factors that Social Security

11   Regulation[2] ("SSR") 95-5p sets forth, which include the claimant's daily activities.  See SSR 95-5p.

12   "With respect to daily activities, this court has held that if a claimant 'is able to spend a substantial

13   part of [his] day engaged in pursuits involving the performance of physical functions that are

14   transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a

15   claimant's allegations.'"  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in

16   original) (citing Morgan v. Commissioner of Social Security Admin., 169 F.3d 595, 600 (9th Cir.

17   1999)); see also Fair, 885 F.2d at 603.  In Fair, however, the Ninth Circuit cautioned that "many

18   home activities are not easily transferable to what may be the more grueling environment of the

19   workplace, where it might be impossible to periodically rest or take medication."  Fair, 885 F.2d

20   at 603.

21           Here, plaintiff did not engage in the type of daily activities that would support the ALJ's

22   decision to reject his credibility.  The Ninth Circuit has found that certain activities, such as grocery

23   shopping, driving a car, or limited walking for exercise, do not "in any way detract from [a

24   claimant's] credibility as to [his] overall disability."  Vertigan, 260 F.3d at 1050; see also Howard

25

26           [2]    Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social

27   Security Administration interpretations of the statute it administers and of its own regulations," and
     are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."

28   Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (claim of pain-induced disability not contradicted by capacity to engage in periodic travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes).  The Ninth Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to be disabled.  See Fair, 885 F.2d at 603 ("The Social Security Act does not require that claimant be utterly incapacitated to be eligible for benefits."); see also Vertigan, 260 F.3d at 1050 ("One does not need to be utterly incapacitated in order to be disabled.").  The limited activities relied on by the ALJ are not of the sort that would readily transfer to the workplace environment.  Neither was a finding made of the portion of the day that plaintiff would be able to perform such activities.

Furthermore, plaintiff's testimony at the hearing indicated that his ability to perform the activities mentioned by the ALJ were more limited in scope than indicated by the ALJ in her decision.  For instance, with respect to the ALJ's contention that plaintiff helps with housework, plaintiff testified, "I try to help with the housework but I don't, I'm not able to do very much with that really."  [AR at 29.] With respect to the ALJ's contention that plaintiff washes the dishes, plaintiff testified, "I'll try to do some of the dishes... [but] I can only stand on my feet for, you know, 15 minutes, 20 minutes at a time...."  [Id.]   Finally, with respect to the ALJ's contention that plaintiff occasionally prepares meals, plaintiff actually stated that he makes the meals "[o]ccasionally, not very often. "  [AR at 30.]  No substantial evidence appears in the record to support the ALJ's finding that plaintiff's daily activities rendered his testimony not credible.

4.   Assistive Device

Finally, the ALJ also noted that plaintiff uses a cane although it was not prescribed by a doctor. [AR at 19.]  An ALJ may consider "all of the available evidence" to evaluate intensity and persistence of a claimant's symptoms in evaluating credibility.  20 C.F.R. §§ 404.1529(a), 416.929(a).  Here, plaintiff's use of an assistive walking device without a prescription does not reflect poorly on plaintiff, but rather lends support to his claim of disabling pain.  Even if plaintiff did not require the use of a cane, as the ALJ appears to suggest, the ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective

1   ambulation.  20 C.F.R., Pt. 404, Subpt. P., App. 1, § 1.00B(2)(b)(2).  Plaintiff testified that he

2   spends most of the day alternating between lying down, "walking around some," and sitting. [AR

3   at 31.]  Furthermore, as mentioned earlier, a claimant's ability to perform limited daily activities,

4   such as walking short distances, does not detract from the claimant's credibility.  Supra.  As such,

5   the Court finds that the ALJ's citation to plaintiff's use of a non-prescribed cane as a ground for

6   rejecting his credibility lacks merit.

7          Overall, the Court finds the reasons cited by the ALJ for rejecting plaintiff's credibility do not

8   withstand scrutiny.  As such, remand is warranted on this issue.

9

10                                         **VI.**

11                       **REMAND FOR FURTHER PROCEEDINGS**

12         As a general rule, remand is warranted where additional administrative proceedings could

13   remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

14   Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).

15   In this case, remand is appropriate for the ALJ to give a clear and convincing reason to reject

16   plaintiff's credibility, if such a reason exists.  The ALJ is instructed to take whatever further action

17   is deemed appropriate and consistent with this decision.

18         Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

19   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

20   for further proceedings consistent with this Memorandum Opinion.

21

22   DATED: July 27, 2007                                    /s/
                                              _____
23                                                    PAUL L. ABRAMS
                                         UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28

                                          10